# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:13-cv-00018-MR-DLH

| | |
|---|---|
| GERALD HYDER, )<br>)<br>Plaintiff, )<br>)<br>)<br>vs. )<br>)<br>)<br>)<br>INOVA DIAGNOSTICS, INC., )<br>ROGER INGLES, and FRED )<br>RUSSO, )<br>)<br>Defendants. )<br>_____ ) | **MEMORANDUM OF**<br>**DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Motion to Dismiss or, Alternatively, to Stay the Action Pending Arbitration filed by Defendants Inova Diagnostics, Inc. and Roger Ingles [Doc. 4].

## I. PROCEDURAL BACKGROUND

On December 20, 2012, the Plaintiff Gerald Hyder ("Plaintiff") filed the present action against Defendants Inova Diagnostics, Inc. ("Inova"), Roger Ingles ("Ingles") (collectively, "Defendants") and Fred Russo ("Russo") in the Buncombe County General Court of Justice, Superior Court Division, asserting claims for violations of the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1, *et seq.* ("Wage and Hour Act") and the North

Carolina Retaliatory Employment Discrimination Act, N.C. Gen. Stat. § 95-240, *et seq.* ("REDA"), as well as for breach of contact. [Complaint, Doc. 1-2 at ¶¶ 31-46]. On January 22, 2013, Defendants Inova and Ingles, with Russo's consent, removed this matter to this Court on the grounds that complete diversity exists between the Plaintiff and the Defendants and that the amount in controversy exceeds $75,000.[1] [Notice of Removal, Doc. 1]. On February 8, 2013, the Defendants filed the present Motion to Dismiss or, Alternatively, to Stay the Action Pending Arbitration [Doc. 4].

## II.  FACTUAL BACKGROUND

Defendant Inova is a California corporation that develops, manufacturers, and sells autoimmune diagnostic instruments and reagents. [Complaint, Doc. 1-1 at ¶5]. At all times relevant to this matter, Defendant Ingles was the President of Inova, and Defendant Russo was the Vice President of Sales. [Id. at ¶¶8, 10]. From approximately November 1, 2001 until December 14, 2011, the Plaintiff was employed with Inova as a regional sales manager based in North Carolina. [Id. at ¶15].

On October 9, 2001, the Plaintiff signed a document entitled "Arbitration Agreement," under which he and Inova mutually agreed to

---

[1] While the Defendants submitted a document indicating that Russo consented to the removal of this case, there is no indication in the record that Russo has been served with a Summons and Complaint and therefore he has not made an appearance in this action. The Plaintiff's failure to effect service upon Russo is addressed later in this opinion.

2

arbitrate certain claims, including those relating to the Plaintiff's employment. [Arbitration Agreement, Doc. 4-2]. Thereafter, on January 8, 2008, Plaintiff signed another agreement entitled "Agreement to Arbitrate Claims" (hereinafter referred to as the "Agreement"). [Doc. 4-3]. Pursuant to its terms, the January 2008 Agreement superseded any prior arbitration agreements between the parties. [Id. at 4].

In the Agreement, the parties agreed to "arbitrate all disputes arising out of or related to [the Plaintiff's] employment with INOVA" except as expressly exempted by the Agreement.[2] [Id. at 1]. Specifically, the Plaintiff agreed to submit to "binding Arbitration" any and all claims concerning his "employment with the Company, including, without limitation, the termination of that employment, claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied) . . . claims for 'whistleblowing' or retaliation; and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance." [Id.]. Plaintiff agreed to arbitrate not only such claims against Inova but also claims against Inova's Board of Directors, members, officers, managers, trustees, administrators, employees, and agents. [Id.].

---

[2] Pursuant to the terms of the Agreement, claims for "workers' compensation or unemployment compensation benefits, and any matter within the jurisdiction of the California Labor Commissioner" are exempted from arbitration. [Id. at 3-4]. None of these exemptions appear to apply to the Plaintiff's present claims.

3

The Agreement includes a forum selection clause mandating arbitration proceedings be conducted in San Diego County, California. [Id. at 2]. The Agreement further provides that arbitration will be conducted "pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C., section 1, et seq., if applicable . . . ." [Id. at 2-3]. The Agreement further states that arbitration will be the exclusive method for resolving covered claims: "You and Inova agree that final and binding arbitration shall be the *sole and exclusive* remedy for resolving any claims covered by this Agreement *instead* of any court action . . . ." [Id. at 2 (emphasis added)].

Despite the existence of this Agreement, the Plaintiff filed suit in North Carolina Superior Court, alleging that the Defendants did not pay required commissions on sales made to a company based in Virginia in breach of an alleged contract and in violation of North Carolina's Wage and Hour Act. [Complaint, Doc. 1-1 at ¶¶31-41]. Additionally, the Plaintiff claims that the Defendants violated REDA by retaliating against him for complaining about unpaid commissions. [Id. at ¶¶ 42-46]. The Defendants now seek to dismiss the action or, alternatively, to the stay the proceedings on the grounds that the Plaintiff is required to arbitrate his claims pursuant to the parties' Agreement.

## III. ANALYSIS

The Federal Arbitration Act (FAA) provides that any written provision to resolve by arbitration a controversy arising pursuant to a contract involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "As a result of this federal policy favoring arbitration, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc., 380 F.3d 200, 204 (4th Cir. 2004) (emphasis omitted) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765, 785 (1983)). The language of the statute is clear: arbitration must be compelled if the parties have entered into a valid arbitration agreement and the dispute falls within the scope thereof. Id.

A party can compel arbitration under the FAA if it can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the

agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [other party] to arbitrate the dispute." Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002) (quoting Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991)). "Because of the strong federal policy favoring arbitration, the burden lies with the party opposing arbitration to demonstrate why arbitration should not be ordered." Wake County Bd. of Educ. v. Dow Roofing Systems, LLC, 792 F.Supp.2d 897, 900 (E.D.N.C. 2011).

### A. The Arbitration Agreement is Valid

In the present case, the Plaintiff first contends that the parties' arbitration agreement is unenforceable because the Agreement is not a valid contract. The validity of an agreement to arbitrate is a question of state law governing contract formation. Adkins, 303 F.3d at 501; First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). As a federal court sitting in diversity, this Court must apply the choice of law principles of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under North Carolina's choice of law rules, "the execution, interpretation, and validity of a contract is to be determined by the law of the state . . . in which it is made." Ingersoll ex rel. Kehrt Revocable Living Trust v. Life

Indus. Corp. of S.C., 698 F.Supp.2d 552, 556 (E.D.N.C. 2010) (citation omitted). Under this principle, North Carolina courts apply "the law of the state where the last act occurred to form a binding contract." Nas Sur. Grp. v. Precision Wood Prods., Inc., 271 F.Supp.2d 776, 780 (M.D.N.C. 2003).

The Defendant contends that the "last act" necessary to form a binding arbitration agreement occurred in North Carolina because that was where the Plaintiff performed his work and the Defendant paid him for that work. Under North Carolina law, however, the "last act" necessary to form a binding contract is generally the acceptance of the agreement, not the performance thereof. See Murray v. Ahlstrom Indus. Holdings, Inc., 131 N.C. App. 294, 296, 506 S.E.2d 724, 726 (1998); Baker v. Chizek Transp., Inc., No. COA10-985, 2011 WL 904271, at *5 (N.C. Ct. App. Mar. 15, 2011). The Plaintiff contends -- and the Defendant does not dispute -- that based on the date that the Agreement was purportedly signed by the Plaintiff, the Agreement would have been executed at a sales meeting held in San Diego, California.[3] [See Affidavit of Gerald Hyder ("Hyder Aff."), Doc. 9-1 at ¶¶7, 9]. Because the Plaintiff's acceptance of the arbitration

---

[3] As discussed in greater detail below, the Plaintiff contends that he has no recollection of signing the Agreement.

7

agreement apparently occurred in California, the Court will therefore apply California law in determining the validity of the Agreement.[4]

The Plaintiff argues that the parties' Agreement is not valid because he did not "knowingly and voluntarily" waive his right to pursue his claims in a judicial forum. [Doc. 9 at 6-10]. While the Plaintiff may be correct that a prospective waiver of the right to bring claims in a judicial forum must be made knowingly and voluntarily, see Gilmer v. Interstate/Johnson Lane Corp., 895 F.2d 195, 200 (4th Cir. 1990), aff'd, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), there is nothing in the record to suggest that the Plaintiff's waiver of such right was anything other than knowing and voluntary. By its terms, the Agreement clearly and expressly waives any right to proceeding in a judicial forum by either party. Although the Plaintiff contends that he has no specific recollection of ever receiving, reviewing, or signing the Agreement [Doc. 9 at 9], he does not dispute that the signature on the Agreement is actually his. California law recognizes that "[o]rdinarily when a person with capacity of reading and understanding an instrument signs it, he may not, in the absence of fraud, imposition or excusable neglect, avoid its terms on the ground he failed to read it before

---

[4] The Court notes, however, that there is little substantive difference between California law and North Carolina law on these issues. Therefore, regardless of which state law is applied in this case, the outcome in this case would be the same.

8

signing it." Bauer v. Jackson, 15 Cal.App.3d 358, 370, 93 Cal. Rptr. 43, 50 (1971). The Plaintiff has not asserted any fraud, imposition or excusable neglect in the formation of the Agreement, and therefore he cannot avoid the mandatory and binding nature of its terms on the grounds that he cannot recall reading it.

The Plaintiff further argues that he did not have an adequate opportunity to consider the document or confer with legal counsel before signing the document. [Id.]. This contention, however, is directly contradicted by the Plaintiff's own certification contained in the body of the Agreement itself:

> I HEREBY CERTIFY THAT BY SIGNING THIS AGREEMENT, I HAVE BEEN ADVISED TO HAVE THIS AGREEMENT REVIEWED AND EXPLAINED TO ME BY MY OWN INDEPENDENT LEGAL COUNSEL. I HEREBY REPRESENT AND WARRANT THAT I UNDERSTAND AND AGREE THAT BY SIGNING THIS AGREEMENT, [I] AND INOVA ARE BOTH GIVING UP OUR RESPECTIVE RIGHTS TO A CIVIL TRIAL AND A JURY TRIAL.

[Agreement, Doc. 4-3 at 4]. Thus, by signing the Agreement, the Plaintiff certified that he understand the import of the document and the fact that he could obtain counsel before signing it.

The Plaintiff additionally argues that there was no exchange of consideration to support the formation of the 2008 Agreement, as he had

9

already been employed with the Defendant for seven years. By its terms, however, the Agreement requires both the Plaintiff and the Defendant to arbitrate any employment-related claims either might have. "Because no consideration is required above and beyond the agreement to be bound by the arbitration process for any claims brought by the employee, [the Defendant's] promise to arbitrate its own claims is *a fortiori* adequate consideration for this agreement." Adkins, 303 F.3d at 501. Thus, the Plaintiff's contention that the Agreement is not supported by adequate consideration is without merit.

### B. The Agreement is Not Unconscionable

"[T]he FAA specifically contemplates that parties may seek revocation of an arbitration agreement under such grounds as exist at law or in equity, including fraud, duress, and unconscionability." Murray v. United Food and Commercial Workers Int'l Union, 289 F.3d 297, 302 (4th Cir. 2002). "Unconscionability is a narrow doctrine where the challenged contract must be one which no reasonable person would enter into, and the inequality must be so gross as to shock the conscience." Sydnor v. Conseco Fin. Servicing Corp., 252 F.3d 302, 305 (4th Cir. 2001) (citation and internal quotation marks omitted).

Under both North Carolina and California law, a party seeking revocation of an arbitration agreement based on unconscionability must demonstrate that the agreement is both procedurally and substantively unconscionable. See Tillman v. Commercial Credit Loans, Inc., 362 N.C. 93, 102, 655 S.E.2d 362, 370 (2008); Armendariz v. Foundation Health Psychcare Servs., Inc., 24 Cal.4th 83, 114, 99 Cal. Rptr.2d 745 (2000).

The Plaintiff contends that the Agreement is procedurally unconscionable because the parties had unequal bargaining power, and because he did not have the opportunity to negotiate the terms of the Agreement. [Doc. 9 at 10-13]. "[P]rocedural unconscionability involves 'bargaining naughtiness' in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power." Tillman, 362 N.C. at 102-03, 655 S.E.2d at 370. Inequality of bargaining power alone, however, is generally not a sufficient reason to hold an arbitration agreement unenforceable. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). As the North Carolina Court of Appeals has noted, if bargaining inequality alone were sufficient to establish procedural unconscionability, most contracts between an individual and a corporation would be unenforceable. See Westmoreland v. High Point Healthcare Inc., 721 S.E.2d 712, 717 (N.C. Ct. App. 2012).

Further, while the Plaintiff contends that he was not given the opportunity to negotiate the terms of the Agreement, he offers no evidence to support this contention. The Plaintiff does not claim that he attempted to negotiated the Agreement and was rebuffed or that he would have attempted to negotiate the terms if given the opportunity to do so. In any event, the fact that the Plaintiff was presented with the Agreement without the ability to offer input as to its terms does not render the Agreement unconscionable under either California or North Carolina law. See Giuliano v. Inland Empire Pers., Inc., 149 Cal. App. 4th 1276, 1292, 58 Cal.Rptr.3d 5, 17-18 (2007) (citations omitted) ("Arbitration clauses in employment contracts have been upheld ... [when they] were presented as part of an adhesion contract on a take-it-or-leave-it basis."); Wilkerson ex rel. Wilkerson v. Nelson, 395 F.Supp.2d 281, 289 (M.D.N.C. 2005) (citation omitted) (finding that even if an arbitration agreement was one of adhesion, the court would not invalidate agreement, but rather give it "greater scrutiny"). Accordingly, the Court concludes that the Agreement is not procedurally unconscionable.

Next, the Plaintiff contends that the Agreement is substantively unconscionable because (1) the fee splitting provision deprives the Plaintiff

of an arbitral forum and (2) the Agreement contains a one-year limitations period. [Doc. 9 at 13, 16].

Under California law, an employee cannot be required to "bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." Armendariz, 24 Cal. 4th at 110-111 (emphasis omitted). Accordingly, for an employment arbitration agreement to be valid, the employer must "pay all types of costs that are unique to arbitration." Id. at 113. In the present case, the Agreement requires the Plaintiff to pay no more than he would pay to bring suit in a judicial forum. [See Doc. 4-3 at 2-3]. As the Plaintiff admits, the Agreement states the Plaintiff's total share of the arbitrator's fee and any filing fee shall be "no more than the then-current filing fee in the California Superior Court (or the equivalent state court in the event the arbitration is filed outside California)." [Id. at 3]. Thus, while the Plaintiff cites figures regarding the cost of procuring an arbitrator and average arbitration fees and expenses, any arbitration fees that the Plaintiff would incur are capped at the amount required to initiate the case in a judicial forum. Further, if the Plaintiff were unable to afford even this expense, the Agreement states that "[t]he arbitrator may grant a waiver of [the Plaintiff's] share of these fees upon a showing of hardship." [Id.]. The Court "fail[s] to see how a claimant

13

could be deterred from pursuing his statutory rights in arbitration simply by the fact that his fees would be paid to the arbitrator where the overall cost of arbitration is otherwise equal to or less than the cost of litigation in court." Bradford v. Rockwell Semiconductor Sys., Inc., 238 F.3d 549, 556 (4th Cir. 2001). Accordingly, the Court concludes that the fee splitting provision does not render the Agreement substantively unconscionable.

The Court further rejects the Plaintiff's argument that the one-year limitations provision renders the Agreement unenforceable. Both California and North Carolina courts have upheld truncated contractual limitations periods for state law claims. See Soltani v. Western & Southern Life Ins. Co., 258 F.3d 1038, 1044-45 (9th Cir. 2001) (upholding six month limitations period under California law); Badgett v. Fed. Express Corp., 378 F.Supp.2d 613, 622 (M.D.N.C. 2005) ("[I]t is a well-settled principle that parties may agree to a limitations period shorter than that provided by state law.").

In support of his argument that the one-year limitations period in the Agreement is unconscionable, the Plaintiff cites Gadson v. SuperShuttle International, 10-CV-01057-AW, 2011 WL 1231311 (D. Md. Mar. 30, 2011), in which the District Court for the District of Maryland invalidated an arbitration provision in part on the basis that the one-year limitations provision contained in the contract was unconscionable. Id. at *8. This

decision, however, was recently vacated and remanded by the Fourth Circuit Court of Appeals. See Muriithi v. Shuttle Exp., Inc., 712 F.3d 173 (4th Cir. 2013). Specifically with respect to the one-year limitations period set forth in the contract, the Fourth Circuit held that the district court erred in considering the limitations provision, as such provision was applicable to the entire contract and was not specific to the arbitration clause. As such, the Court concluded, consideration of the limitations provision was "reserved for the forum in which the dispute ultimately will be resolved." Id. at 184. In the present case, the limitations provision *is* specific to the parties' arbitration agreement, as the arbitration agreement was executed separately from any other employment agreements between the parties. Thus, the reasoning of Miriithi is not applicable to the present case.

The Plaintiff also cites to two California cases, in which courts deemed arbitration agreements to be unenforceable in part due to limitations provisions that were deemed to be unconscionable. In each of these cases, however, the court's determination of unconscionability was based on numerous deficiencies in the agreement and not just the one-year limitations provision. See Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 893-94 (9th Cir. 2002); Al-Safin v. Circuit City Stores, Inc., 394 F.3d 1254, 1261-62 (9th Cir. 2005). Thus, the case law cited by the Plaintiff is

15

distinguishable and provides no grounds for concluding that the one-year limitations period renders the Agreement unconscionable.

For the foregoing reasons, the Court concludes that the parties' arbitration agreement is valid and enforceable. Accordingly, the Court will grant the Defendants' Motion and stay this action pending resolution of the parties' arbitration. See 9 U.S.C. § 3; Murray, 289 F.3d at 301; S. Concrete Prods., Inc. v. ARCO Design/Build, Inc., No. 1:11cv194, 2012 WL 1067906, at *8 (W.D.N.C. Mar. 29, 2012).

Finally, the Court notes that there is nothing in the record to indicate that the Plaintiff has served Defendant Fred Russo. The Plaintiff is hereby placed on notice that unless good cause is shown to the Court for its failure to effect service of the Summons and Complaint on Defendant Russo within fourteen (14) days from service of this Order, the Plaintiff's action against this Defendant shall be dismissed without prejudice. See Fed. R. Civ. P. 4(m).

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion to Dismiss or, Alternatively, to Stay the Action Pending Arbitration [Doc. 4] is **GRANTED** to the extent that this action is hereby **STAYED** as to

Defendants Inova Diagnostics, Inc. and Roger Ingles pending the resolution of the parties' arbitration.

**IT IS FURTHER ORDERED** that the Plaintiff shall show good cause within fourteen (14) days of service of this Order for the failure to effect service on the Defendant Fred Russo; and

**IT IS FURTHER ORDERED** that failure of the Plaintiff to respond in writing within fourteen (14) days shall result in the dismissal without prejudice of Defendant Russo.

**IT IS SO ORDERED.**

Signed: June 15, 2013

Martin Reidinger
United States District Judge